David E. Bower (SBN 119546)
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT PERRON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ARMO BIOSCIENCES, INC., PETER VAN VLASSELAER, XIANGMIN CUI, CARL GORDON, PIERRE LEGAULT, NAIYER RIZVI, BETH SEIDENBERG, and STELLA XU,<br><br>Defendants. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>1. **VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934** |

Albert Perron ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.  This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of ARMO BioSciences, Inc. ("ARMO" or the "Company") against ARMO and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with ARMO, the "Defendants") for their violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78n(e) and 78t(a) in connection with the tender offer ("Tender Offer") by Eli Lilly and Company through its subsidiaries ("Eli Lilly") to acquire all of the issued and outstanding shares of ARMO (the "Proposed Transaction").

2. On May 9, 2018, ARMO entered into a definitive agreement and plan of merger (the "Merger Agreement"), whereby each shareholder of ARMO common stock will receive $50.00 per share (the "Offer Price").

3. On May 23, 2018, in order to convince ARMO stockholders to tender their shares, the Board authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the Securities and Exchange Commission ("SEC"). In particular, the Recommendation Statement contains materially incomplete and misleading information concerning: (i) ARMO's financial projections; (ii) the valuation analyses performed by the Company's financial advisor, Centerview Partners LLC ("Centerview"); and (iii) information related to the background of the Proposed Transaction.

4. The Tender Offer is scheduled to expire at one-minute-past 11:59 p.m., eastern time, on June 21, 2018 (the "Expiration Date"). It is imperative that the material information that has been omitted from the Recommendation Statement is disclosed to the Company's stockholders prior to the forthcoming Expiration Date so they can properly determine whether to tender their shares.

5. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from closing the Tender Offer or taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to ARMO stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(e) and 20(a) of the Exchange Act.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) ARMO maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

9. Plaintiff is, and at all relevant times has been, a stockholder of ARMO.

10. Defendant ARMO is a Delaware corporation and maintains its headquarters at 575 Chesapeake Drive, Redwood City, California 94063. ARMO is a late-stage immuno-oncology company that is developing a pipeline of novel, proprietary product candidates that activate the immune system of cancer patients to recognize and eradicate tumors. The Company's common stock trades on the Nasdaq under the ticker symbol "ARMO".

11. Individual Defendant Peter Van Vlasselaer ("Van Vlasselaer") is the Company's co-founder and has been Chief Executive Officer ("CEO"), President and a director of the Company since December 2012. As of May 9, 2018, defendant Van Vlasselaer owned 809,865 shares of Company common stock, or approximately 2.7% of the Company's outstanding shares.

12. Individual Xiangmin Cui ("Cui") has been a director of the Company since August 2017. Defendant Cui is the founder and a managing director since 2011 of Decheng Capital China Life Sciences USD Fund II, L.P. ("Decheng Capital"), which beneficially owns approximately 4.0% of the Company's outstanding shares.

13. Individual Defendant Carl Gordon ("Gordon") has been a director of the Company since December 2012. Since 1998, defendant Gordon has been a partner and co-head of global private equity at OrbiMed Advisors LLC ("OrbiMed"), which beneficially owns approximately 13.6% of the Company's outstanding shares.

14. Individual Defendant Pierre Lagault ("Lagault") has been a director of the Company since April 2017.

15. Individual Defendant Naiyer Rizvi ("Rizvi") has been a director of the Company since June 2017.

16. Individual Defendant Beth Seidenberg ("Seidenberg") has been a director of the Company since December 2012. Since May 2005, defendant Seidenberg has been a partner at Kleiner Perkins Caufield & Byers ("Kleiner Perkins"), ARMO's largest stockholder which beneficially owns approximately 14.0% of the Company's outstanding shares.

17. Individual Defendant Stella Xu ("Xu") has been a director of the Company since August 2017. Since August 2017, defendant Xu has also served as a managing director of Quan Venture Fund I, L.P. ("Quan Capital" and, together with Kleiner Perkins, OrbiMed, Decheng Capital and defendant Van Vlasselaer, the "Supporting Stockholders"), which beneficially owns approximately 1.3% of the Company's outstanding shares.

18. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants".

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of ARMO (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

20. This action is properly maintainable as a class action because:

    a. The Class is so numerous that joinder of all members is impracticable. As of the close of business on May 21, 2018, there were 30,405,109 shares issued and outstanding, held by hundreds to thousands of individuals and entities scattered throughout

the country. The actual number of public stockholders of ARMO will be ascertained through discovery;

 b. There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

  i) whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Recommendation Statement, in violation of Sections 14(e) of the Exchange Act;

  ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

  iii) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to tender their shares based on the materially incomplete and misleading Recommendation Statement.

 c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

 d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

 e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

 f. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

 g. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**SUBSTANTIVE ALLEGATIONS**

**I.    Background and the Proposed Transaction**

21.    ARMO, incorporated on June 23, 2010, is an immuno-oncology company. The Company is focused on developing a pipeline of novel, proprietary product candidates that activate the immune system of cancer patients to recognize and eradicate tumors. The Company's lead product, AM0010, is a long acting form of human Interleukin-10 (IL-10). IL-10 is a naturally occurring immune cell growth factor in humans that is critical for the proliferation and cytotoxic activity of tumor specific CD8+ T cells. PEGylated form of IL-10 is called AM0010 (pegilodecakin) and has been studied in its ongoing Phase I/Ib clinical trial in over 350 cancer patients across a multitude of tumor types and many treatment settings. The Company has also initiated SEQUOIA a Phase III clinical trial in PDAC.

22.    Eli Lilly, on January 17, 1901, is engaged in drug manufacturing business. The Company discovers, develops, manufactures, and markets products in two segments: human pharmaceutical products and animal health products. The Company's human pharmaceutical business segment sells medicines, which are discovered or developed by its scientists. Its animal health business segment operates through the Company's Elanco division, which develops, manufactures and markets products for both food animals and companion animals. As of December 31, 2016, the Company manufactured and distributed its products through facilities in the United States, Puerto Rico, and 14 other countries.

23.    On May 10, 2018, ARMO and Eli Lilly issued a joint press release announcing the Proposed Transaction. The press release stated in relevant part:

> **Lilly Announces Agreement To Acquire ARMO BioSciences**
> *$1.6 billion transaction will bolster Lilly's clinical portfolio with ARMO's lead immuno-oncology asset, pegilodecakin, which is being studied in multiple tumor types*
>
> INDIANAPOLIS, IN and REDWOOD CITY, CA – Eli Lilly and Company (NYSE: LLY) and ARMO BioSciences, Inc. (NASDAQ: ARMO) today announced a definitive agreement for Lilly to acquire ARMO for $50 per share, or approximately $1.6 billion, in an all-cash transaction. ARMO BioSciences is a late-stage immuno-oncology company that is developing a pipeline of novel, proprietary product candidates designed to activate the immune system of cancer patients to recognize and eradicate tumors.

6
CLASS ACTION COMPLAINT

> The acquisition will bolster Lilly's immuno-oncology program through the addition of ARMO's lead product candidate, pegilodecakin, a PEGylated IL-10 which has demonstrated clinical benefit as a single agent, and in combination with both chemotherapy and checkpoint inhibitor therapy, across several tumor types. Pegilodecakin is currently being studied in a Phase 3 clinical trial in pancreatic cancer, as well as earlier-Phase trials in lung and renal cell cancer, melanoma and other solid tumor types. ARMO also has a number of other immuno-oncology product candidates in various stages of pre-clinical development.
>
> "At Lilly Oncology, we are dedicated to developing cancer medicines that will make a meaningful difference for patients," said Sue Mahony, Ph.D., Lilly senior vice president and president of Lilly Oncology. "The acquisition of ARMO BioSciences adds a promising next generation clinical immunotherapy asset to Lilly's portfolio of innovative oncology medicines."
>
> "As we develop our immuno-oncology portfolio, Lilly will pursue medicines that use the body's immune system in new ways to treat cancer," added Levi Garraway, M.D., Ph.D., senior vice president, global development and medical affairs, Lilly Oncology, "We believe that pegilodecakin has a unique immunologic mechanism of action that could eventually allow physicians to offer new hope for many cancer patients."
>
> "ARMO is proud of the work we have done to advance the study of immunotherapies and of the development of pegilodecakin to-date," said Peter Van Vlasselaer, Ph.D., President and Chief Executive Officer of ARMO BioSciences. "Given the resources that Lilly, a leader in oncology R&D, can bring to bear to maximize the value of pegilodecakin and the rest of the ARMO pipeline, we believe it is in the best interest of ARMO, our stockholders and the patients we serve, to execute this transaction."
>
> Under the terms of the agreement, Lilly will promptly commence a tender offer to acquire all shares of ARMO BioSciences for a purchase price of $50 per share in cash, or approximately $1.6 billion. The transaction is expected to close by the end of the second quarter of 2018, subject to customary closing conditions, including receipt of required regulatory approvals and the tender of a majority of the outstanding shares of ARMO's common stock. Very shortly after the closing of the tender offer, Lilly will acquire any shares of ARMO that are not tendered into the tender offer through a second-step merger at the tender offer price.
>
> This transaction will be reflected in Lilly's reported results and financial guidance according to Generally Accepted Accounting Principles (GAAP), and is subject to customary closing conditions. There will be no change to Lilly's 2018 non-GAAP earnings per share guidance as a result of this transaction.
>
> Credit Suisse is acting as the exclusive financial advisor and Wachtell, Lipton, Rosen & Katz is acting as legal advisor to Lilly in this transaction. Centerview Partners LLC is acting as lead financial advisor to ARMO BioSciences and the Board and Jefferies LLC is

providing financial advice to ARMO, and Gunderson Dettmer is acting as legal advisor to ARMO.

**About Eli Lilly and Company**

Lilly is a global healthcare leader that unites caring with discovery to make life better for people around the world. We were founded more than a century ago by a man committed to creating high-quality medicines that meet real needs, and today we remain true to that mission in all our work. Across the globe, Lilly employees work to discover and bring life-changing medicines to those who need them, improve the understanding and management of disease, and give back to communities through philanthropy and volunteerism. To learn more about Lilly, please visit us at www.lilly.com and www.lilly.com/newsroom/social-channels.

**About ARMO BioSciences**

ARMO BioSciences is a late-stage immuno-oncology company that is developing a pipeline of novel, proprietary product candidates that activate the immune system of cancer patients to recognize and eradicate tumors. The Company's lead product candidate, AM0010 (pegilodecakin, PEGylated Interleukin-10), has demonstrated clinical benefit as a single agent, and in combination with both chemotherapy and checkpoint inhibitor therapy, across several tumor types. The drug is currently being investigated in a Phase 3 randomized pivotal clinical trial in pancreatic cancer patients, as well as earlier-Phase trials in lung cancer, liver cancer, melanoma and other solid tumor types. ARMO also has a number of other immuno-oncology product candidates in various stages of pre-clinical development including: AM0001, an anti-PD-1 monoclonal antibody; AM0003, an anti-LAG-3 checkpoint inhibitor; AM0015, form of recombinant human Interleukin-15 (IL-15); and AM0012, a form of recombinant human Interleukin-12 (IL-12). For more information, please visit www.armobio.com.

24. The Offer Price represents inadequate consideration for ARMO stockholders. Indeed, $50.00 represents a 12.5% *discount* to the Company's high trading price less three months prior to the announcement of the Proposed Transaction. It is therefore imperative that stockholders receive the material information (discussed in detail below) that Defendants have omitted from the Recommendation Statement, which is necessary for stockholders to properly exercise their corporate suffrage rights and make an informed decision concerning whether to tender their shares in the Proposed Transaction.

## II. The Recommendation Statement Is Materially Incomplete and Misleading

25.     On May 23, 2018, Defendants filed the Recommendation Statement with the SEC. The Recommendation Statement has been disseminated to the Company's stockholders, and solicits the Company's stockholders to tender their shares in the Tender Offer.  The Individual Defendants were obligated to carefully review the Recommendation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Recommendation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e) and 20(a) of the Exchange Act.

26.     First, the Recommendation Statement fails to disclose the full range of financial metrics utilized by Centerview in rendering their fairness opinion. Specifically, the Recommendation Statement omits the value of preclinical non-AM0010 pipeline, net operating losses, net cash as of June 30, 2018, and wall street research analyst stock price targets. Centerview explicitly utilized these financial metrics to value the Company and derive the fairness of the Proposed Transaction. As such, their disclosure is material to ARMO stockholders.

27.     Second, the Recommendation Statement omits the components of the unlevered free cash flow projections. Investors are concerned, perhaps above all else, with the unlevered free cash flows of the companies in which they invest.  Under sound corporate finance theory, the value of stock should be premised on the expected unlevered free cash flows of the corporation. Accordingly, the question that the Company's stockholders need to assess in determining whether to tender their shares in favor of a transaction is clear – is the Offer Price fair compensation given the expected unlevered free cash flows?  Unlevered free cash flows are a non-GAAP financial metric, so their calculation can vary from company to company. Given the importance of unlevered free cash flows to stockholders and the potential for variation in their calculation, the failure to disclose all the components of the unlevered free cash flows renders the financial projections misleading.

28. Third, the Recommendation Statement states that the included projections reflect the probability of regulatory success, including AM0010, but makes no mention of any actual probabilities of success. These probabilities directly affect the revenue, income, and cash flow projections as well as the dependent financial analyses. If ARMO assigned an inappropriate or incongruent probability of success, they could have dramatically altered the apparent valuation of the Company. Therefore, it is necessary that the probabilities of success and their application to the financial projections be disclosed.

29. The omission of the above information renders the financial projections included on pages 27-28 of the Recommendation Statement materially incomplete and misleading. If a recommendation statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.

30. With respect to Centerview's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following key components used in the analysis: (i) the inputs and assumptions underlying the calculation of the discount rate range of 12.5% to 14.5%, including all WACC components; (ii) the rationale for excluding the impact of preclinical non-AM0010 pipeline R&D; and (iii) the actual terminal value calculated, including the inputs and assumptions underlying its calculation.

31. These key inputs are material to ARMO stockholders, and their omission renders the summary of Centerview's Discounted Cash Flow Analysis incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id*. As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion *unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices*. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

32. With respect to the *Background of the Transaction*, the Recommendation Statement states that each of Company A, Company B, and Company C entered into a non-disclosure agreement with ARMO that contained a standstill provison, but fails to disclose whether such agreements contained a "don't ask don't waive" ("DADW") provision, including whether those provisions had fallen away upon the execution of the Merger Agreement or were still in effect. The Recommendation Statement provides the terms of the standstill provision between Eli Lilly and ARMO, but fails to make the disclosures for the other Companies. Such information is material to ARMO stockholders, as it bears directly on the ability of parties that expressed interest in acquiring the Company to offer them a better deal. The failure to disclose the existence of DADW provisions creates the false impression that any of the parties who signed non-disclosure agreements could have made a superior proposal. That's not true. If those non-disclosure agreements contained DADW provisions, they could only make a superior proposal by breaching the agreement, because in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly. Thus, the omission of this information renders the descriptions of the non-disclosure agreements the Company entered into materially incomplete and misleading. Any reasonable shareholder would deem the fact that the most likely potential topping bidder in the marketplace may be precluded from making a superior offer to significantly alter the total mix of information.

33. Finally, on page 9, the Recommendation Statement provides that the Board had no knowledge of any employment arrangements or discussion of any employment arrangements, but then simultaneously states that "[a]ny such arrangements with the existing management team are currently expected to be entered into after the completion of the Offer and will not become effective until after the Merger is completed, if at all." Such statements are contradictory and materially misleading to ARMO stockholders. If the date of completion and/or execution are known or expected, then there must be some knowledge of the underlying arrangement. Moreover, this information is vital to ARMO's stockholders so that they may understand the conflicts of interest facing management and the Board. The timing and nature of post-close employment provides key insight concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders. If the Board negotiated for their own interests ahead of stockholder compensation, stockholders would certainly find such information material. Accordingly, the conflicting account of continued employment for ARMO officers and directors provided in the Recommendation Statement is a materially misleading statement.

34. In sum, the omission and/or misstatement of the above-referenced information renders statements in the Recommendation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

35. Plaintiffs repeat and reallege the preceding allegations as if fully set forth herein.

36. Defendants caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Transaction.

37. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not

misleading . . . in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation." 15 U.S.C. § 78n(e).

38. Defendants violated this clause of Section 14(e) because they negligently caused or allowed the Recommendation Statement to be disseminated to ARMO stockholders in order to solicit them to tender their shares in the Tender Offer, and the Recommendation Statement contained untrue statements of material fact and/or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

39. Defendants negligently omitted the material information identified above from the Recommendation Statement or negligently failed to notice that such material information had been omitted from the Recommendation Statement, which caused certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading. As directors and officers of ARMO, the Individual Defendants had a duty to carefully review the Recommendation Statement before it was disseminated to the Company's stockholders to ensure that it did not contain untrue statements of material fact and did not omit material facts. The Individual Defendants were negligent in carrying out their duty.

40. ARMO is imputed with the negligence of the Individual Defendants, who were each directors and/or senior officers of ARMO.

41. As a direct result of Defendants' negligent preparation, review, and dissemination of the false and/or misleading Recommendation Statement, Plaintiffs and the Class were impeded from exercising their right to seek appraisal on a fully informed basis and were induced to tender their shares and accept the inadequate Offer Price in connection with the Transaction. The false and/or misleading Recommendation Statement used to solicit the tendering of shares impeded Plaintiffs and the Class from making a fully informed decision regarding the Tender Offer and was

13
CLASS ACTION COMPLAINT

1  an essential link in consummating the Transaction, which deprived them of full and fair value for
2  their ARMO shares.  At all times relevant to the dissemination of the materially false and/or
3  misleading Recommendation Statement, Defendants were aware of and/or had access to the true
4  facts concerning the process involved in selling ARMO, the projections for ARMO, and ARMO's
5  true value, which was greater than the Offer Price ARMO's stockholders received.  Thus, as a
6  direct and proximate result of the dissemination of the false and/or misleading Recommendation
7  Statement Defendants used to obtain stockholder approval of and thereby consummate the
8  Transaction, Plaintiffs and the Class have suffered damage and actual economic losses (i.e., the
9  difference between the price ARMO stockholders received and the true value of their shares at the
10 time of the Transaction) in an amount to be determined at trial.

11  42.  The misrepresentations and omissions in the Recommendation Statement are material in that a reasonable stockholder would have considered them important in deciding whether to tender their shares in the Tender Offer.  In addition, a reasonable investor would view a full and accurate disclosure as having significantly altered the "total mix" of information made available in the Recommendation Statement and in other information reasonably available to stockholders.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43.  Plaintiffs repeat and reallege the preceding allegations as if fully set forth herein.

44.  The Individual Defendants acted as controlling persons of ARMO within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of ARMO and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false and misleading statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiffs contend are false and misleading.

45.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiffs to be misleading prior to and/or

shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Transaction. They were thus directly involved in the making of the Recommendation Statement.

47. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the Individual Defendants' conduct, Plaintiffs and the Class have suffered damage and actual economic losses (i.e., the difference between the price ARMO stockholders received and the true value of their shares at the time of the Transaction) in an amount to be determined at trial.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Recommendation Statement;

C. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D. Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F. Granting such other and further equitable relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: June 5, 2018

Respectfully submitted,

**OF COUNSEL**

*/s/ David E. Bower*
David E. Bower

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, New York 10118
Tel: 212-971-1341
Fax: 212-202-7880
Email: jmonteverde@monteverdelaw.com

*Counsel for Plaintiff*

David E. Bower SBN 119546
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880
Email: dbower@monteverdelaw.com

*Counsel for Plaintiff*

16
CLASS ACTION COMPLAINT